## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Luke Vilsmeyer*<br>Case No. 7:20-cv-00113 | Case No.: 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## <u>DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

Defendants are entitled to judgment as a matter of law on all three claims the jury found in favor of Vilsmeyer—strict liability design defect, strict liability failure to warn, and negligent failure to warn, *see* Dkt. 139—because Vilsmeyer failed to establish that the CAEv2 caused his injuries.  All of Vilsmeyer's claims require causation, *i.e.*, that the CAEv2's alleged defects caused him to develop hearing loss and tinnitus.  But Vilsmeyer offered no evidence that an alleged CAEv2 defect prevented him personally from getting a good fit or caused the earplug to loosen in his ears.  His claims thus fail as a matter of law, requiring judgment for Defendants.

## <u>LEGAL STANDARD</u>

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue" and there is "a legally sufficient evidentiary basis to find for the party on that issue[.]"  Fed. R. Civ. P. 50(a)(1); *see also Bogle v. Orange Cnty. Bd. of*

*Cnty. Comm'rs*, 162 F.3d 653, 659 (11th Cir. 1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law, offered at the conclusion of the plaintiff's case, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.") (internal quotation and citations omitted).   A party may renew a Rule 50(a) motion for judgment as a matter of law after the entry of judgment.   Fed. R. Civ. P. 50(b).

## ARGUMENT

### I.   VILSMEYER'S FAILURE TO PROVE CAUSATION REQUIRES JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS.

Vilsmeyer failed to introduce evidence from which a reasonable jury could conclude that an alleged defect in the CAEv2 caused his injuries.   Vilsmeyer argued at trial that the CAEv2 was capable of loosening, and thus of injuring him, because: (1) the opposing flanges could interfere with the outer ear; and (2) the plastic stem was too hard and too wide.   To prevail on any of his claims under that theory of causation, Vilsmeyer had to show that the CAEv2 was the "but for" cause of his injuries, which required him to show that the opposing flanges of the CAEv2 or the width and rigidity of its stem prevented caused loosening in his ear.   *See Schooley v. Pinch's Deli Market, Inc.*, 951 P.2d 749, 754 (Wash. 1998) (en banc).

Under Washington law, "expert testimony is always required except in those few situations where understanding causation 'does not require technical medical expertise.'" *Frausto v. Yakima HMA, LLC*, 393 P.3d 776, 779 (Wash. 2017) (quoting

2

*Young v. Key Pharms., Inc.*, 770 P.2d 182, 189 (Wash. 1989)) (en banc).  Consistent with that legal requirement, which is common to many states, the MDL court has already ruled that plaintiffs must produce expert evidence that, considered together with non-expert evidence, would allow a reasonable jury to find, to a reasonable degree of medical probability or certainty, "both that (1) the CAEv2 had defects that could have caused his injuries, and (2) that one or more of those defects did in fact cause his injuries."  *Baker v. 3M, et al.*, Case No. 7:20-cv-39 (N.D. Fla.), Dkt. 87 at 7.

Vilsmeyer failed to establish the first element of causation—that "the CAEv2 had defects that could have caused his injuries"—because he provided *no* expert testimony that the CAEv2 did not fit him or loosened in his ears because of its alleged design defects.  Under settled law, Vilsmeyer cannot rest on a general assertion that the CAEv2 does not fit anyone or will loosen in anyone's ears.[1]  None of the experts who testified at trial offered the opinion that the alleged defects would affect **everyone** who used the CAEv2.  On the contrary, Vilsmeyer's expert Richard

---

[1] This Court previously held that evidence of lack of fit in an individual plaintiff was not required, but that was based on the report of plaintiffs' expert Dr. David Eddins, who "offer[ed] the opinion that the [CAEv2] … will not properly fit anyone."  *See Baker* Dkt. 87 at 7 n.3.  But Eddins did not testify at this trial, and as explained below, none of the experts who did testify offered the unsupportable opinion that the CAEv2 will not fit a single person.

McKinley admitted "some people are going to get good attenuation; some people are going to get bad attenuation." 3/21/22 Tr. at 78:17-19.

The alleged defects that McKinley identified—"the opposing flange and the hard, stiff adaptor piece"—could not possibly affect every individual, regardless of ear canal size and shape. *Id.* at 60:16-17. The width and rigidity of the stem can affect fit or cause loosening only if the individual's ear canal is too narrow or curvy to accommodate the stem. Similarly, even crediting plaintiffs' reading of the flange report, the opposing flanges cause loosening only if any contact with the outer ear is sufficiently material to create a force capable of pulling the inserted end of the earplug out of a particular user's ear canal. The report stated that "the geometry of the earcanal opening sometimes prevented the deep plug insertion required for maximum attenuation values." S-Gen-6 at 2. Specifically, the opposing flanges sometimes "pressed against the subject's earcanal opening and folded up" and then, when "the inward pressure on the plug was released," the opposing flanges "tended to return to their original shape and this sometimes loosened the plug." *Id.* Whether "the geometry" of a particular "earcanal opening" would give rise to this fitting issue is an individualized inquiry that depends on, among other things, the size and shape of the user's ear canal, and the strength of the seal achieved when that user inserts the CAEv2.

The key point is that the effect of these alleged defects depends on the characteristics of each individual's ear canal and outer ear. But none of Vilsmeyer's testifying experts analyzed Vilsmeyer's ear canals or outer ear and explained why either of the CAEv2's alleged defects would prevent him, specifically, from getting a secure fit.

*First*, there was **no** expert testimony that the width of the CAEv2's hard plastic stem affected Vilsmeyer. No one measured Vilsmeyer's ear canals and testified that they were too narrow or curvy to accommodate the CAEv2's stem. Vilsmeyer's failure to offer any competent evidence to support one of his two theories of defect requires a new trial on all claims, even if the Court were to determine that expert testimony supported Vilsmeyer's separate theory of opposing-flange interference. *See Richards v. Michelin Tire Corp.,* 21 F.3d 1048, 1055 (11th Cir. 1994) ("Where, as here, two or more claims are submitted to the jury in a single interrogatory, a new trial may be required if either of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim."); *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 31 (1st Cir. 2004) (remanding for new trial because one of two defect theories "was inadequate on causation grounds" and "the verdict may have rested solely on [that] theory").

*Second*, with regard to the theory of opposing-flange interference, the only relevant testimony came from Dr. Arriaga, who simply observed that the opposing flanges of the CAEv2 came into contact with Vilsmeyer's tragus. *See* 3/17/22 Tr. at 276:2-14. But Dr. Arriaga did not attempt to investigate whether the degree of opposing-flange contact he observed in Vilsmeyer's ears was, in fact, sufficient to cause loosening. The mere "possibility" that the opposing flanges might have caused loosening, based solely on the fact of tragus contact and Dr. Arriaga's reading of the flange report, is not sufficient support for the element of causation. *See Potter v. Dep't of Labor & Indus.*, 289 P.3d 727, 732 (Wash. App. 2012) ("[I]f there is no evidence of causation beyond a possibility, it is error to submit the case to the jury.").

Because Vilsmeyer offered no expert testimony that could have established to a reasonable degree of medical certainty or probability that the allegedly defective features of the CAEv2 caused him to obtain an inadequate fit with the product, or caused the product to loosen in his ears, all of his claims fail as a matter of law. [2]

---

[2] Vilsmeyer may respond that his allegations regarding the limitations of the CAEv2's nonlinear filter when used at outdoor gun ranges do not depend on individual fit. But, as discussed above, the failure to provide causation evidence to support any *one* of his theories of injury requires a new trial, without any evidence related to that unsupported theory. *See Richards v. Michelin Tire Corp.,* 21 F.3d 1048, 1055 (11th Cir. 1994); *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 31 (1st Cir. 2004). Because Vilsmeyer did not provide adequate evidence of causation for

## **CONCLUSION**

For these reasons, Defendants are entitled to judgment as a matter of law on all claims.

Dated:  May 31, 2022                                  Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel.: (312) 862-2000
mnomellini@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

---

either of his inadequate-fit theories, Defendants would be entitled to a new trial limited to the gun-range issue, if those allegations survived.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this motion contains 1,494 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  May 31, 2022                       Respectfully submitted,

*/s/ Robert C. Brock*_____
Robert C. "Mike" Brock

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2022, I caused a copy of the foregoing to be

filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Robert C. Brock*

Robert C. "Mike" Brock